UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN DOE 1, *as Parent and Natural Guardian of his son, John Doe 2, a person under the age of 18*; *et al.*,

         Plaintiffs,

   v.

STARPOINT CENTRAL SCHOOL DISTRICT, *et al.*,

         Defendants.

23-CV-207-LJV
DECISION & ORDER

---

On February 28, 2023, the plaintiffs—a student in the Starpoint Central School District in Lockport, New York ("Starpoint"), and the parents of another Starpoint student—commenced this action in New York State Supreme Court, Niagara County.[1] Docket Item 1-1; *see also* Docket Item 26-2 (redacted petition). They claim that the students' "emergency removal"[2] from Starpoint High School was based on unfounded allegations of sexual harassment and therefore is arbitrary and capricious. *See id.* And

---

[1] Because of one of the students is a minor, he is proceeding through his parents. *See* Docket Item 1-1. This Court therefore refers to "the students" when it means the two removed students in particular and to "the plaintiffs" when it means the plaintiffs generally.

[2] Under the Title IX regulation titled "[e]mergency removal," a school may "remov[e] a respondent from the [school's] education program or activity on an emergency basis, provided that the [school] undertakes an individualized safety and risk analysis, determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal, and provides the respondent with notice and an opportunity to challenge the decision immediately following the removal." 34 C.F.R. § 106.44(c).

they seek an order under Article 78 of the New York Civil Practice Law and Rules ("C.P.L.R.") vacating Starpoint's decision to remove the students from school.  *See id.*

On March 7, 2023, the defendants—Starpoint, the Starpoint Board of Education, and Starpoint Superintendent Dr. Sean Croft—removed the case to this Court.  Docket Item 1.  They maintain that this Court has subject matter jurisdiction over the plaintiffs' Article 78 petition because the plaintiffs' claims really arise under federal law—namely, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and the regulations governing emergency removal, *see* 34 C.F.R. § 106.44(c).  Docket Item 1.

On March 16, 2023, the plaintiffs moved to remand and to expedite the resolution of that motion.  Docket Item 7.  This Court granted the motion to expedite that same day, Docket Item 8, and on March 29, 2023, the defendants responded to the motion to remand, Docket Item 14.  The plaintiffs replied on March 31, 2023, Docket Item 15, and three days later, this Court heard oral argument on the motion to remand, Docket Item 17.

For the reasons that follow, the motion to remand is granted, and the case is remanded to New York State Supreme Court, Niagara County.  The plaintiffs' motion to proceed by pseudonym also is granted, but their request for attorney's fees and costs is denied.

### **FACTUAL BACKGROUND**[3]

As mentioned above, the plaintiffs are a student at Starpoint High School and the parents of another Starpoint student.  Docket Item 1-1 at ¶¶ 2-3.  Both students are

---

[3] The following facts are taken from the plaintiffs' Article 78 petition, Docket Item 1-1.  "On a motion to remand for lack of subject matter jurisdiction, courts assume the

members of the Starpoint wrestling team.  *Id.* at ¶ 20.  On February 7, 2023, Dr. Croft sent the students a "Notice of Emergency Removal," which informed them that Starpoint had "conducted an individualized safety and risk analysis" and "determined that [they] pose[] an immediate threat to the physical health and safety of students."  *Id.* at ¶¶ 10-11.  According to the plaintiffs, those "'Notices of Emergency Removal' were deficient in that they did not identify the 'emergency threat of physical safety or harm' perpetrated by [the students]."  *Id.* at ¶ 12.  The notices also "provided no other information on the allegations of sexual harassment."  *Id.* at ¶ 13.  Immediately after receiving the notices, the plaintiffs' attorneys "challenged [the] decision and requested all relevant documentation associated with [Starpoint's d]ecision."  *Id.* at ¶¶ 14-15.

The plaintiffs say that any allegations of sexual harassment are false.  They maintain that the allegations were based on "three . . . 'piling on' incidents" involving the Starpoint wrestling team, which were merely instances of team "roughhousing" and not sexual harassment.  *Id.* at ¶¶ 22, 25.  The plaintiffs also allege that wrestling team coaches were present during each of the incidents.  *Id.* at ¶¶ 23-30.

Nevertheless, on February 9, Starpoint informed the students "by 'Notice of Formal Complaint of Sexual Harassment Under Title IX'" that they had been accused of sexual harassment.  *Id.* at ¶¶ 16-17.  The notices set a hearing date for the following morning.  *Id.*

---

truth of non-jurisdictional facts alleged in the complaint, but may consider materials outside [] the complaint, such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis."  *Guzman v. First Chinese Presbyterian Cmty. Affs. Home Attendant Corp.*, 520 F. Supp. 3d 353, 356 (S.D.N.Y. 2021).

At the hearing, Starpoint "provided no additional information in support of its decision." *Id.* at ¶ 19.  In fact, Starpoint "did not explain how either [of the students] posed an immediate physical threat to anyone." *Id.*  The students therefore "objected to [their] removal" from school "and demanded that [Starpoint] explain how either [of them] posed 'an immediate threat to the physical safety'" of other students.  *Id.*

Four days after the hearing, Dr. Croft "upheld the 'Emergency Removal' of [the students] without stating any reason for the determination"; rather, he said only that he "d[id] not find there to be sufficient grounds to reverse the initial determination." *Id.* at ¶ 38.  Because of their removal from Starpoint, the students are not allowed to attend school in person and are barred from school property.  *Id.* at ¶ 1.  Two weeks after Dr. Croft upheld the removal, the plaintiffs filed their petition under C.P.L.R. Article 78 in New York State Supreme Court, Niagara County.  Docket Item 1-1.

## LEGAL PRINCIPLES

Under 28 U.S.C. § 1441, a defendant may remove a case from state court if that case "could have been brought originally in [federal] court."  *See Freeman v. Burlington Broads., Inc.*, 204 F.3d 311, 319 (2d Cir. 2000).  "When, as here, there is no 'diversity of citizenship, federal[ ]question jurisdiction is required.'" *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60 (2d Cir. 2023) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  "In a case removed to federal court from state court, the removal statute is to be interpreted narrowly, and the burden is on the removing party to show that subject matter jurisdiction exists and that removal was timely and proper." *Barone v. Bausch & Lomb, Inc.*, 372 F. Supp. 3d 141, 146 (W.D.N.Y. 2019).  "All doubts should be resolved

4

against removability." *Winter v. Novartis Pharms. Corp.*, 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014) (citing *Lupo v. Human Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

## **DISCUSSION**

### **I.      MOTION TO PROCEED BY PSEUDONYM**

Immediately after the case was removed to this Court, the defendants moved to seal the entire docket and all filings, citing the sensitive nature of the allegations and the fact that the state court docket had been kept entirely under seal prior to removal. *See* Docket Item 2. While the motion to seal was pending, the case remained under seal. But this Court warned the parties that it did not believe that sealing the entire docket and all filings was appropriate and asked for an explanation of why more targeted restrictions—for example, redactions or anonymization—were inadequate to protect privacy interests. *See* Docket Items 5, 8.

On April 3, 2023, this Court granted the motion to seal only in part and unsealed the docket. *See* Docket Item 16. More specifically, this Court found that the First Amendment and the common law presumption of access to judicial records required public access both to the docket and to at least redacted versions of the filings. *See id.* at 3. To account for the privacy interests implicated in the case, however, and after weighing the ten factors in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), this Court allowed the plaintiffs to proceed temporarily by pseudonym. *See* Docket Item 16 at 6-9. Because the plaintiffs had not actually moved to proceed by pseudonym, this Court ordered them to do so within two days if they wished to continue to proceed anonymously. *See id.* at 10.

5

The plaintiffs now have moved to proceed by pseudonym. Docket Item 26. That motion does not add anything further to the analysis in this Court's prior order, presumably because the plaintiffs incorporate the Court's analysis by reference. For their part, the defendants "do not oppose" the plaintiffs' request to proceed by pseudonym. Docket Item 28 at 2.

In the absence of any opposition by the defendants, and for the reasons stated in this Court's prior order, Docket Item 16, the plaintiffs' request to proceed by pseudonym is granted.

## II.     MOTION TO REMAND

"Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (quoting 28 U.S.C. § 1331). Generally, a case arises under federal law where the plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983). By and large, "the plaintiff is the master of the complaint" and is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998).

In this case, the plaintiffs have pleaded only a state law claim: they say that the students' removal from Starpoint High School was arbitrary and capricious and therefore should be vacated under C.P.L.R. Article 78. *See* Docket Item 1-1. They do not raise a standalone claim under Title IX, nor do they raise any claim under some

6

other federal statute (for example, 42 U.S.C. § 1983).  And because a plaintiff is "free to avoid federal jurisdiction by pleading only state claims," *Marcus*, 138 F.3d at 52, the absence of a federal claim here normally would end the jurisdictional inquiry.

Nevertheless, the defendants argue that this Court has jurisdiction because the plaintiffs' petition necessarily raises an actually disputed, substantial federal issue that can be resolved in this Court without disrupting the balance between state courts and federal courts.[4]  *See* Docket Item 14 at 6-9.  And they argue that this Court also has jurisdiction because of a Title IX regulation that explicitly preempts conflicting state laws.  *See id.* at 9.  For the reasons that follow, neither of those arguments carries the day.

### A.   The Plaintiffs' Claims Do Not Raise a Substantial Federal Issue.

"In the mine run of cases, a suit arises under the law that creates the cause of action."  *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 (2020) (alterations, citation, and internal quotation marks omitted).  But "in certain cases" where a plaintiff has not asserted a federal cause of action, a claim nevertheless may arise under

---

[4] The defendants also invoke the "artful-pleading" doctrine, a "corollary to the well-pleaded[ ]complaint rule," which "rests on the principle that a plaintiff may not defeat federal subject[ ]matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005).  "The precise scope of the artful-pleading doctrine is not entirely clear," *see id.* at 272 n.4, but the Second Circuit has said that it applies in cases of complete preemption, *see Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010), and has cited it in passing in cases involving a substantial, disputed federal question, *see NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) (briefly referring to the artful-pleading doctrine before noting that "even in the absence of artful pleading, federal jurisdiction may properly be exercised over . . . state claims that present significant, disputed issues of federal law").  Because neither complete preemption nor the substantial federal question doctrine supports removal here, the exact nature of the artful-pleading doctrine is not dispositive.

federal law "if the vindication of a state law right necessarily turns on a question of federal law." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014). That narrower basis for jurisdiction, sometimes called the "substantial federal question doctrine, [] recognizes that 'in certain cases federal[ ]question jurisdiction will lie over state[ ]law claims that implicate significant federal issues.'" *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 393 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).

"[T]he Supreme Court has been sparing in recognizing state law claims" that fall within this category of federal question jurisdiction. *NASDAQ OMX*, 770 F.3d at 1019; *see also id.* at 1024 ("signal[ing] caution in identifying the narrow category of state claims over which federal jurisdiction may be exercised"). For a state law claim to fall within this "special and small category," *see Gunn*, 568 U.S. at 258 (citation and internal quotation marks omitted), that claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated

without disrupting Congress's intended division of labor between state and federal courts." *Id.* (citing *Grable*, 545 U.S. at 313).

According to the defendants, the plaintiffs' Article 78 petition fits within this "special and small" category because their claim that the students' removal was arbitrary and capricious turns exclusively on whether the defendants properly removed the students from school under Title IX regulations.  Docket Item 14 at 6-9.  The plaintiffs disagree, maintaining that their Article 78 petition "challenges the arbitrary and capricious removal of [the students]" under state law and does not "alleg[e] the existence of a legitimate federal issue."  Docket Item 7 at 77.

This Court assumes that the Title IX issue here—whether the Title IX provisions governing emergency removal were validly invoked—is necessarily raised and actually disputed.  *See Grable*, 545 U.S. at 314.  That is, the Court presumes that the first two factors under *Grable* are satisfied because resolving whether the students' removal was arbitrary and capricious necessarily will require resolving a dispute about the application of Title IX regulations.

As in *Gunn*, however, the defendants' argument "founders on *Grable*'s next requirement, [because] the federal issue in this case is not substantial in the relevant sense."  *Gunn*, 568 U.S. at 260.  For a federal issue raised in a state law claim to be substantial, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raises a disputed federal issue."  *Id.* (emphasis in original) (alterations and internal quotation marks omitted).  Instead, "[t]he substantiality inquiry under *Grable* looks [] to the importance of the issue to the federal system as a whole."  *Id.*

9

The Supreme Court has found such a "substantial issue" in cases where the dispute turned on "a nearly 'pure issue of law'"; in other words, where the state law claim raised a disputed federal issue "that could be settled once and for all and thereafter would govern numerous [other] cases." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (quoting Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 65 (2005 Supp.)). For example, in *Grable*, the federal issue raised in that quiet title action—the requirements for notice under a specific federal statute, *see Grable*, 545 U.S. at 314-16—was sufficiently substantial because "its resolution was both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assurance*, 547 U.S. at 700.

Here, by contrast, the plaintiffs' Article 78 petition does not raise some freestanding question of federal law that would have broader implications for numerous subsequent cases. Instead, the plaintiffs' claims challenge the specific factual basis for the students' removal from school—that is, whether the students in fact posed an immediate threat to the physical health or safety of another student. So any Title IX dispute therefore is inextricably tied to this removal of these particular students. That is the sort of "fact-bound and situation-specific" dispute that is "poles apart from *Grable*" and therefore is not a substantial federal issue. *See id.* at 700-01. And without a substantial federal issue, this Court lacks federal question jurisdiction. *See Gunn*, 568 U.S. at 258.

Although the absence of a substantial federal issue means that *Grable*'s fourth consideration is not dispositive, this Court addresses that consideration and concludes

10

that "the appropriate balance of federal and state judicial responsibilities" likewise cuts against jurisdiction here.  *See id.* at 264 (citation and internal quotation marks omitted).  As the plaintiffs note, district courts in the Second Circuit have "routinely declined to exercise supplemental jurisdiction over Article 78 claims" because of the "special solicitude afforded to this purely state procedural remedy."  *Maniscalco v. N.Y.C. Dep't of Educ.*, 563 F. Supp. 3d 33, 42 (E.D.N.Y. 2021) (citation and internal quotation marks omitted); *see also E. End Eruv Ass'n, Inc. v. Town of Southampton*, 2014 WL 4826226, at *18 (E.D.N.Y. Sept. 24, 2014) ("agree[ing] with the essentially unanimous position of the New York federal district courts that the very nature of an Article 78 proceeding presents [] compelling reasons" for declining to exercise supplemental jurisdiction (alterations, citation, and internal quotation marks omitted)).  Although this Court need not, and does not, decide whether a federal court may *ever* exercise jurisdiction over an Article 78 petition—a source of some dispute between the parties, *compare* Docket Item 7 at 77-79, *with* Docket Item 14 at 9-11—that overwhelming consensus of decisions shows that at least in most cases, New York State courts are the appropriate tribunals to hear Article 78 petitions.

For all those reasons, the plaintiffs' claims in this case are not the sort that can be "squeezed into the slim category *Grable* exemplifies."  *Empire Healthchoice Assurance*, 547 U.S. at 701.  So the defendants cannot show that this Court has subject matter jurisdiction—and that removal therefore was proper—based on the substantial federal question doctrine.

B.     **Preemption Is Not a Basis for Removal.**

At oral argument, the defendants also invoked the preemptive effect of Title IX as another basis for removal. "The complete preemption doctrine is an exception to the well-pleaded complaint rule" and therefore offers a basis for removing what would appear to be a state law claim. *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019). "Complete preemption occurs when a federal statute preempts and replaces all state[ ]law causes of action so a claim which comes within the scope of that federal cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Solomon*, 62 F.4th at 60 (alterations, citation, and internal quotation marks omitted). "In those cases, 'the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (internal quotation marks omitted) (quoting *Caterpillar*, 482 U.S. at 393).

Like the "special and small" category of jurisdiction under the substantial federal question doctrine detailed above, jurisdiction based on complete preemption is "rare." *Id.* at 60 n.2. In fact, the Second Circuit surveyed the landscape earlier this year and found only five instances when either the Supreme Court or the Second Circuit had found that a federal statute completely preempted state law. *See id.* (listing those five statutes: section 301 of the Labor Management Relations Act, section 502(a)(1)(B) of the Employee Retirement Income Security Act, sections 85 and 86 of the National Bank Act, section 408 of the Air Transportation Safety and System Stabilization Act, and section 301 of the Copyright Act). Title IX was not among them. *See id.*

A look at the preemption provision that the defendants rely on, 34 C.F.R. § 106.6(h), shows why. That regulation provides that "*[t]o the extent of a conflict* between

State or local law and [T]itle IX as implemented by [34 C.F.R.] §§ 106.30, 106.44, and 106.45, the obligation to comply with [sections] 106.30, 106.44, and 106.45 is not obviated or alleviated by any State or local law." 34 C.F.R. § 106.6(h) (emphasis added). In other words, that provision simply reiterates the uncontroversial proposition that federal law preempts conflicting state law.

But "[m]any federal statutes—far more than support complete preemption—will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under state law." See Sullivan, 424 F.3d at 272-73. And "[t]he Supreme Court has left no doubt[] that a plaintiff's suit does not arise under federal law"—and therefore cannot be removed from state court—"simply because the defendant may raise the defense of ordinary preemption." Id. at 273.

In this case, the defendants may argue that their decision to remove the students should not be vacated under Article 78 because Starpoint and its administrators complied with Title IX and its relevant regulations. And they might then argue that to the extent that state law conflicts with Title IX, federal law controls. But "it is [] settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff[s'] complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, 482 U.S. at 393 (emphasis in original). So even if the preemptive effect of Title IX might be relevant—indeed, even if it may be dispositive—at some later stage of this case, it does not provide an independent basis for removal.

13

### III.     REQUEST FOR ATTORNEY'S FEES AND COSTS

For the reasons stated above, this Court lacks subject matter jurisdiction and grants the plaintiffs' motion to remand.  The plaintiffs also request attorney's fees and costs on the grounds that there was "no objectively reasonable basis" to argue that the plaintiffs' claims arose under federal law and therefore that this case could be removed. *See* Docket Item 7 at 79-80.

After granting a motion to remand, a district court "may require payment of just costs and any actual expenses, including attorney['s] fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Section 1447(c) 'affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees.'"  *Farnum v. Crown Equip. Corp.*, 2021 WL 2581266, at *5 (S.D.N.Y. June 23, 2021) (quoting *Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992)).  But generally "courts may award attorney['s] fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Id.* (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).

Although this Court finds that removal based on federal question jurisdiction was not proper here, it was not objectively unreasonable.  The defendants raised colorable arguments that the plaintiffs' claims satisfied the *Grable* test, and the Supreme Court itself has recognized the "general confusion on [the] question" of whether a particular state law claim arises under federal law.  *See Gunn*, 568 U.S. at 258.  So while removal here may have the unfortunate effect of delaying the resolution of the plaintiffs' Article 78 petition, it was not unreasonable.  The plaintiffs' request for attorney's fees and costs therefore is denied.

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motion to remand, Docket Item 7, and their motion to proceed by pseudonym, Docket Item 26, are GRANTED, but their request for attorney's fees and costs, Docket Item 7, is DENIED.  The case is REMANDED to New York State Supreme Court, Niagara County.  The Clerk of the Court shall close the case.

SO ORDERED.

Dated:   April 10, 2023
            Buffalo, New York


                                             */s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE